UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

WILLIAM GRECIA,

    Plaintiff,

        v.

NEIMAN MARCUS GROUP, INC.,

    Defendant.

__ Civ. _____ (  )

**COMPLAINT**

**JURY TRIAL DEMANDED**

-------------------------------------------------------x

    William Grecia brings this patent-infringement action against Neiman Marcus Group, Inc. ("Neiman Marcus").

**Parties**

    1.    William Grecia is an individual. He maintains a residence in Downingtown, Pennsylvania.

    2.    Neiman Marcus is a Delaware corporation, having its principal place of business in Dallas, Texas.

**Jurisdiction and Venue**

    3.    This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

    4.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

    5.    This Court may exercise personal jurisdiction over Neiman Marcus. Neiman

Marcus conducts continuous and systematic business in New York and in this District. Neiman Marcus maintains corporate offices in this District. This patent-infringement case arises directly from Neiman Marcus's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Neiman Marcus would be consistent with traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(b).

### Infringement of U.S. Patent No. 8,533,860

7. William Grecia hereby realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1-6 above.

8. William Grecia is the exclusive owner of the '860 patent, which is attached as Exhibit 1.

9. The '860 patent is valid and enforceable.

10. Neiman Marcus is infringing at least one of the 30 methods, systems, and apparatuses claimed in the '860 patent by its use of the AMEX Checkout service.

11. For example, and for illustration of at least one of the 30 claims of the '860 patent that Grecia alleges that Neiman Marcus infringes, Neiman Marcus directly infringes claim 11 of the '860 patent as follows:

    a. Claim 11 is, "A non-transitory computer medium comprising *a program code*, the program code being a part of an operating system software or downloaded in sections from a web server, the operating system software program coupled with a user executing a method for authorizing access to digital content wherein the program code, when executed in a processor for facilitating access rights between a plurality of data

processing devices, performs the following steps . . . ." (Ex. 1, 16:41-48 (emphasis added).) Neiman Marcus uses American Express Checkout ("AMEX Checkout') on its website to sell merchandise to customers. Neiman Marcus installs program code--specifically, Javascript Library--on the Neiman Marcus website. Through such installation, the Neiman Marcus website displays the AMEX Checkout Button and, therefore, causes the installed program code to perform the elements listed in claim 11.

   b. Claim 11's program code initiates "*receiving* a digital content request from at least one communications console of the plurality of data processing devices, the access request being a read or write request of metadata of the digital content, wherein the read or write request of metadata is *performed in connection with a combination of the operating system software program and a cloud system*, the request comprising *a verification token provided by the user corresponding to the digital content*, wherein the verification token is one or more of a password, e-mail address, payment system, *credit card*, authorize ready device, rights token, key, file, or one or more redeemable instruments of trade . . . ." (Ex. 1, 16:49-60 (emphasis added).) When a customer purchases a dress from the Neiman Marcus website, for example, the program code Neiman Marcus has installed allows the customer to enter her credit card personal account number ("PAN") through the Neiman Marcus website. The PAN is received as a request to write a token that will be associated with the PAN; the token and not the PAN to be used to purchase the dress from the Neiman Marcus website.

   c. Claim 11 "authenticat[es] the verification token . . . ." (Ex. 1, 16:61.) The Neiman Marcus customer's PAN is authenticated.

    d. Claim 11 includes "establishing a connection with the at least one communications console, wherein the communications console is a combination of a graphic user interface (GUI) and an Applications Programmable Interface (API) wherein the ***API is related to a verified web service***, the web service capable of facilitating a two way data exchange to complete a verification process wherein the data exchange session comprises at least one identification reference" (Ex. 1, 16:62-17:3 (emphasis added).) The program code Neiman Marcus installed on its website facilitates a connection with AMEX Token Services ("AMEX Web Service"). The connection with the AMEX Web Service is possible because of an API key exchanged between Neiman Marcus and AMEX Web Service.

    e. Claim 11 includes "***requesting*** the at least one identification reference from the at least one communications console, wherein the identification reference is one or more of a ***verified web service account identifier***, letter, number, rights token, e-mail, password, access time, serial number, address, manufacturer identification, checksum, operating system version, browser version, credential, cookie, or key . . . [and] ***receiving*** the at least one identification reference from the at least one communications console . . . ." (Ex. 1, 17:4-12 (emphasis added).) The program code that Neiman Marcus installed on its website allows the connection with the AMEX Web Service and, in turn, allows for the request and the receipt of a token that will be used for the customer's purchase of the dress instead of the PAN.

    f. Claim 11 includes "***writing*** at least one of the verification token or the identification reference into the metadata." (Ex. 1, 17:13-15 (emphasis added).) The

program code Neiman Marcus installed on its website allows for the token to be written to the metadata of the customer's digital content. This is illustrated when the customer has completed the purchase of the dress on the website. The order confirmation lists only the last four digits of the customer's PAN so that Neiman Marcus may match the last four digits of the PAN with the token used to purchase the dress in Neiman Marcus's records.

### Prayer for Relief

WHEREFORE, William Grecia prays for the following relief against Neiman Marcus:

(a)     Judgment that Neiman Marcus has directly infringed claims of the '860 patent;

(b)     A reasonable royalty;

(c)     Pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(d)     Post-judgment injunction; and

(e)     Such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

William Grecia demands a trial by jury on all matters and issues so triable.

Date: September 8, 2016

Respectfully Submitted,

/s/ Matthew M. Wawrzyn
Matthew M. Wawrzyn (*pro hac vice* pending)
matt@wawrzynlaw.com
WAWRZYN & JARVIS LLC
233 S. Wacker Drive, 84th Floor
Chicago, IL 60606
312.283.8010

*Counsel for William Grecia*